UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civ. No. 05-649 JNE/JGL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BASHIR MOGHUL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CONSENT DECREE

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Department of Housing and Urban Development ("HUD") and the United States Environmental Protection Agency ("EPA"), has filed a complaint alleging that Bashir Moghul ("Defendant") violated Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Section 1018"), 42 U.S.C. § 4852d; and

WHEREAS, Section 1018 and the implementing regulations, found at 24 C.F.R. Part 35, Subpart A, and 40 C.F.R. Part 745, Subpart F, require, among other things, that the owners and managing agents of residential properties subject to the law make certain disclosures and provide certain records concerning Lead-Based Paint and Lead-Based Paint Hazards to tenants when a new lease is

entered into or, if the lease predates the effective date of Section 1018, at the first change to the terms of an existing lease, such as a rent increase; and

WHEREAS, Defendant owns and manages 17 residential properties in Minnesota constructed prior to 1978 containing approximately 22 units; Defendant owns and manages 3 residential properties in Wisconsin constructed prior to 1978 containing approximately 4 units; and Defendant owns and manages 7 residential properties in Indiana constructed prior to 1978 containing approximately 14 units; and

WHEREAS, the United States alleges that Defendant failed to make certain disclosures required by Section 1018 in 28 residential properties in Minnesota, Wisconsin, and Indiana; and

WHEREAS, the United States alleges it is entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendant to comply with Section 1018 prospectively, and an order requiring Defendant to abate Lead-Based Paint; and

WHEREAS, the United States alleges that Defendant is subject to administrative civil penalties by HUD and EPA

for violations of Section 1018 of up to $11,000 per violation; and

WHEREAS, the United States and Defendant agree that settlement of the claims of the United States without further litigation is in the public interest and that entry of this Consent Decree is an appropriate means of resolving this matter; and

WHEREAS, the Parties agree that settlement and entry of this Consent Decree does not constitute admission or acknowledgment of liability or wrongdoing by Defendant, but is intended solely to settle all claims asserted by the United States against Defendant on the terms set forth herein.

NOW, THEREFORE, upon consent and agreement of the United States and Defendant, and the Court having considered the matter and been duly advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.   The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345

and 42 U.S.C. § 4852d(b)(2) and has personal jurisdiction over Defendant. Further, Defendant consents to this Court's jurisdiction over him with respect to properties he has an ownership or management interest in which are located in Wisconsin and Indiana, to the extent the United States would allege that violations of Section 1018 occurred in those states prior to entry of this Consent Decree. Defendant consents to, and shall not challenge entry of, this Consent Decree and the Court's jurisdiction to enter and enforce this Consent Decree.

2. Venue is proper in this Court pursuant to 42 U.S.C. § 4852d(b)(2) and 28 U.S.C. § 1391(b) & (c), because the lawsuit involves actions that took place, and 18 Subject Properties are located, in the District of Minnesota.

## II.   **PARTIES BOUND**

3. This Consent Decree shall apply to and be binding on the United States and Defendant, and his heirs, successors, and assigns.

4. Defendant shall remain liable to the United States for all the obligations set forth in this Consent Decree regardless of whether Defendant sells or transfers

any property subject to this Consent Decree.

### III.   **DEFINITIONS**

5.    Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Residential Lead-Based Paint Hazard Reduction Act shall have the meaning given in the Act or in any regulations promulgated pursuant to the Act.   Whenever other terms listed below are used in this Consent Decree, the following definitions shall apply:

a.   "Clearance Examination" shall mean an activity conducted after Lead-Based Paint abatement activities have been performed to determine that the abatement activities are complete and that no settled dust-lead hazards exist. The clearance process includes a visual assessment and collection and analysis of environmental samples.   The appropriate clearance standards shall be the more restrictive of those set by the jurisdiction where the property is located or by Section 403 of the Toxic Substances Control Act ("TSCA") and its implementing regulations, 40 C.F.R. Part 745, Subpart D.

b.   "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

c.   A "force majeure event" shall mean any event beyond the control of Defendants, their contractors, or any entity controlled by Defendants that delays the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

d.   "HUD Guidelines" shall mean the edition of the "HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing" in effect on the date the work is conducted pursuant to this Consent Decree.

e. "Interest" shall mean interest pursuant to 28 U.S.C. § 1961.

f. "Lead-Based Paint" shall mean paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.

g. "Lead-Based Paint Free" shall mean housing that has been found to be free of paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.

h. "Lead-Based Paint Hazards" shall mean lead-based paint hazards as that term is defined in 40 CFR 745.65.

i. "Lead Abatement Supervisor" shall mean any person licensed by the State in which the property is located to perform lead abatement and mitigation, and supervise lead abatement workers who perform lead abatement and mitigation.

j. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or a lower case letter.

k.   "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

l.   "Subject Properties" shall mean the properties listed on Appendix A, attached hereto.

### IV.   COMPLIANCE WITH SECTION 1018

6.   Defendant shall comply with all requirements of Section 1018 and its implementing regulations.

7.   To the extent not previously accomplished, no later than ten (10) days after entry of this Consent Decree, Defendant shall provide to each tenant in the Subject Properties a lead hazard information pamphlet approved by EPA, as well as a "lead paint disclosure form" which shall include at a minimum the following:

a.   Any known information concerning Lead-Based Paint Hazards and/or Lead-Based Paint, or state if there is no such knowledge;

b.   A list of any available records or reports, or summaries thereof, pertaining to Lead-Based Paint Hazards and/or Lead-Based Paint in the Subject Properties; and

c.   A Lead Warning Statement containing the specific language set forth in regulations promulgated

8

pursuant to Section 1018.

8.    Within twenty (20) days after entry of this Consent Decree, Defendant shall provide written notice to HUD and EPA that he has complied with the requirements of Paragraph 7 of this Consent Decree.

## V.   **PAYMENT OF PENALTY**

9.    Within thirty (30) days after entry of this Consent Decree, Defendant shall pay a civil penalty of $5,000 to the United States, as an administrative penalty for past violations of Section 1018.

10.    Payment of the civil penalty shall be rendered by cashier's check to the United States Department of Justice, in accordance with current procedures, referencing USAO File Number 2004V00143 and the civil action case name and case number of the District of Minnesota.

11.    Notification that payment of the civil penalty has been made, referencing the USAO File Number 2004V00143 and the civil action case name and case number of the District of Minnesota, shall be provided in accordance with the notification provisions of Section XVI.

12.   If Defendant fails to make any payment under Paragraph 9, he shall be subject to Stipulated Penalties pursuant to Paragraph 24 of this Consent Decree.   In addition, Interest shall accrue on any unpaid amounts until the total amount due has been received.

13.   Defendant shall not deduct the civil penalty paid to the United States, or any Interest or Stipulated Penalties, paid under this Consent Decree from his federal, state, or local income taxes, and the United States does not in any way release Defendant from any claims arising under Title 26 of the United States Code.

## VI. **WORK TO BE PERFORMED**

14.   This Section shall govern the Lead-Based Paint risk assessments, window replacement, and hazard abatement work to be performed under this Consent Decree at all Subject Properties.

15.a.   To the extent not previously accomplished, no later than six (6) months after entry of this Consent Decree, Defendant shall have performed Lead-Based Paint risk assessments in all Subject Properties for Lead-Based Paint Hazards consistent with Chapter 5 of the HUD Guidelines. For each Subject Property, Defendant shall provide a copy of

10

the Lead-Based Paint risk assessment report ("Risk Assessment Report") to HUD and EPA no later than fifteen (15) days after receipt of the Risk Assessment Report. These timelines do not apply to any Subject Property subject to demolition in accordance with Paragraph 17.e.

b.   As part of the Risk Assessment Report, in each Subject Property, Defendant shall assume the presence of Lead-Based Paint at all windows, and shall identify where windows are located in each Subject Property.

16.a.   No later than seven (7) months after entry of this Consent Decree, Defendant shall provide copies to HUD and EPA of a plan for window replacement and Lead-Based Paint Hazard abatement ("Hazard Abatement Plan") for all Subject Properties where Lead-Based Paint and Lead-Based Paint Hazards have been identified and/or assumed. The Hazard Abatement Plan shall be prepared by a certified Lead Abatement Supervisor and shall include: (1) a list of property addresses to be abated and a list of property addresses to be demolished; (2) a list of properties with children and the address and unit number; (3) information about the components to be abated; (4) the method of

11

abatement chosen; and (5) the names and certification numbers of certified abatement contractors used. The Hazard Abatement Plan shall be prepared to ensure that Lead-Based Paint and Lead-Based Paint Hazard abatement activities required by Section VI of this Consent Decree are conducted in accordance with Chapters 12 and/or 13 of the HUD Guidelines. The Hazard Abatement Plan shall include specifications as provided in the HUD Guidelines, Appendix 7.3. Lead-Based Paint Abatement Specification, or the equivalent.

b. After review of the Hazard Abatement Plan, HUD shall, in writing: (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing Defendant to resubmit the document after modification to address HUD's comments. If HUD disapproves of or requires revisions to the Hazard Abatement Plan, in whole or in part, Defendant shall amend and submit to HUD and EPA a revised Hazard Abatement Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments. If the Hazard Abatement

Plan, as revised by Defendant, is still not acceptable to HUD, HUD shall revise the Hazard Abatement Plan itself and Defendant shall implement this Plan as revised by HUD, subject to Defendant's right to dispute resolution.   The Hazard Abatement Plan must be approved by HUD before any work is performed at the Subject Properties pursuant to this Consent Decree.

   c.   No later than thirty (30) days after approval of the Hazard Abatement Plan, Defendant shall submit a plan to HUD for ongoing operations and maintenance ("O&M Plan") for those properties that are not Lead-Based Paint Free. After review of the O&M Plan, HUD shall, in writing:   (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to resubmit the document after modification to address HUD's comments.   If HUD disapproves of or requires revisions to the O&M Plan, in whole or in part, Defendant shall amend and resubmit to HUD a revised O&M Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments.   If the O&M Plan, as revised by

Defendant, is still not acceptable to HUD, HUD shall revise the O&M Plan itself and Defendant shall implement this Plan as revised by HUD, subject to Defendant's right to dispute resolution.   The O&M Plan shall be prepared in accordance with Chapters 6 and 17 of the HUD Guidelines.

17.     For each Subject Property, except those subject to Paragraph 17.e. below, the following work shall be performed:

a.   Replacement of all windows, in accordance with the Hazard Abatement Plan and Chapter 12 of the HUD Guidelines, or replacement of all painted friction and impact surfaces on window components, including but not limited to jambs, stop beads, parting strips, and sashes, in accordance with the Hazard Abatement Plan and Chapter 12 of the HUD Guidelines, and abatement of remaining painted window components, in accordance with the Hazard Abatement Plan and Chapters 12 and/or 13 of the HUD Guidelines.   Replacement of all windows and/or window components shall be completed within one (1) year of approval of the Hazard Abatement Plan.

b.   Lead-Based Paint Hazard abatement of the units and exteriors of each Subject Property shall be completed

14

within four (4) years and six (6) months after approval of the Hazard Abatement Plan, except hazard abatement of properties with children six (6) years of age or under or pregnant women shall be completed within one (1) year of approval of the Hazard Abatement Plan.  Hazard abatement of the Subject Properties shall be in accordance with the Hazard Abatement Plan and with Chapters 12 and/or 13 of the HUD Guidelines.

c.   No later than one (1) year after the approval of the Hazard Abatement Plan, abatement of any Lead-Based Paint Hazards identified in the common areas in each Subject Property shall be performed in accordance with the Hazard Abatement Plan and with Chapters 12 and/or 13 of the HUD Guidelines.

d.   No later than sixty (60) days after the approval of the Hazard Abatement Plan, any bare soil identified on the grounds of each Subject Property shall be covered with a vegetative ground covering, mulch, or other appropriate covering in accordance with the Hazard Abatement Plan and Chapter 11 of the HUD Guidelines.

e.   In lieu of performing the window replacement and lead-based paint hazard abatement described above, Defendant may choose to demolish certain Subject Properties. Demolition must be completed within one (1) year after entry of this Consent Decree and must be performed in accordance with the laws of the jurisdiction where the property is located.   For any Subject Property not demolished by the end of that one (1) year period, within six (6) months, Defendant will be required to perform a risk assessment, window replacement, lead-based paint hazard abatement, and clearance at the Subject Property, in accordance with Paragraphs 17.a.-d. and f.-h.

f.   Worksite preparation and occupant protection shall be in accordance with Chapter 8 of the HUD Guidelines.

g.      Daily and final cleanups shall be in accordance with Chapter 14 of the HUD Guidelines.

h.   Clearance Examinations shall be conducted by a certified Lead-Based Paint risk assessor in each building upon completion of final cleanup in accordance with Chapter 15 of the HUD Guidelines, TSCA Section 403, 15 U.S.C. § 2683, and 40 CFR 745.227(e)(8) and (9).   Within fifteen (15)

16

days of the receipt of the clearance examination report ("Clearance Report"), Defendant shall submit the Clearance Report to HUD. The Clearance Report shall contain all results of dust samples analyzed at an EPA-accredited laboratory. If the results indicate that the clearance standard is not achieved, Defendant shall repeat the cleaning procedures identified above under Paragraph 17.g., repeat dust clearance sampling within five (5) days after receipt of the failed Clearance Report, and repeat this procedure until the clearance standard has been attained. All additional Clearance Reports shall be submitted as described above.

i. In each of the four and one-half years, Defendant shall make substantial and reasonable progress on the Lead-Based Paint abatement and hazard abatement agreed to in this Consent Decree and shall detail the progress made in the Annual Report required in Paragraph 23 of this Decree. The Parties agree that substantial and reasonable progress shall mean at least 9 units of the total inventory of Subject Properties shall be completed in each of the four and one-half years.

18.   All the requirements of this Section, except the timelines, shall apply where Defendant or any governmental entity is or becomes aware of a unit where a child with an elevated blood lead level resides or is a regular visitor.   Defendant shall perform a Lead-Based Paint risk assessment and complete all required window replacement and hazard abatement activity within five (5) months after Defendant is or becomes aware of a unit where a child with an elevated blood lead level resides or is a regular visitor.   Defendant shall also comply with any work required by any other government entity, such as the City, County, or State.

19.  Ongoing operations and maintenance ("O&M") in all Subject Properties that are not certified Lead-Based Paint Free shall be implemented at the completion of any window replacement and/or hazard abatement activity, and shall be in accordance with the O&M Plan and Chapters 6 and 17 of the HUD Guidelines.   During reevaluations, Defendant shall ensure that all abated areas are still intact and the abatement method has not failed.   If any abatement has failed, Defendant shall repair the area in accordance with

18

Chapters 12 and/or 13 of the HUD Guidelines and perform a Clearance Examination within thirty (30) days of discovery. If dust hazards are discovered as part of ongoing reevaluations, Defendant shall address them according to Chapter 11 of the HUD Guidelines.

**VII.   QUALIFICATIONS TO CONDUCT LEAD-BASED PAINT WORK**

20. All Lead-Based Paint risk assessments, window replacement, hazard abatement, and other Lead-Based Paint work shall be consistent with the HUD Guidelines and conducted by individuals authorized to perform the work in accordance with the laws of the jurisdiction where the property is located.   Persons performing interim controls, visual assessments for O&M, and general maintenance shall be trained in either HUD's one day "Lead Safe Work Practices" class or the HUD/EPA "Remodeling, Repair, and Painting" class.

21. Defendant shall ensure that Clearance Examinations are not conducted by the same individual and/or same business entity conducting the Lead-Based Paint Hazard abatement work that is being evaluated by the Clearance Examination.

19

22.  Defendant shall ensure that Lead-Based Paint risk assessments are not done by the same individual and/or same business entity doing Lead-Based Paint Hazard abatement work on the Subject Properties.

## VIII.  **REPORTING REQUIREMENTS**

23.a.  On or before the one (1) year anniversary of the entry of this Consent Decree, and annually thereafter until completion of all window replacement and Lead-Based Paint Hazard abatement, Defendant shall submit a written Annual Report to HUD and EPA.  The Annual Report shall include, at a minimum: (1) a list of the property addresses where properties have been abated or demolished; (2) the status of window replacement and hazard abatement activities, including the type of abatement method chosen and components abated, and a list of the property addresses where window replacement and/or hazard abatement has been completed during that reporting period; (3) the status of ongoing O&M activities in accordance with Paragraph 19; (4) any and all information concerning the cost of the risk assessments, window replacement, and hazard abatement performed; (5) any Clearance Reports that have not been

previously provided to HUD under Paragraph 17.h.; (6) a list of properties to be abated in the next reporting period; and (7) any State or City notices relating to Lead-Based Paint violations at the Subject Properties.

b.   Defendant shall ensure contractor compliance with any State and/or City requirements for reporting Lead-Based Paint risk assessments, window replacement, and hazard abatement work in accordance with the laws of the jurisdiction where the property is located.

## X.   **STIPULATED PENALTIES**

24.   If Defendant fails to make timely payment of the penalty provided for in Section V, Defendant shall be required to pay as Stipulated Penalties $400 per day. Stipulated Penalties shall accrue until such time as the original penalty and all accrued Interest and Stipulated Penalties are paid.

25.   If Defendant fails to complete testing as described in Paragraph 15, to complete window replacement and/or hazard abatement as described in Paragraphs 17 and 18, or to conduct O&M as described in Paragraph 19, Defendant shall pay Stipulated Penalties of $400 per day per

violation per each unit, until the window replacement, hazard abatement and/or O&M is completed.   If any abatement method fails because of Defendant's failure to follow the HUD Guidelines and/or conduct O&M as described in Paragraph 19, those properties shall not be considered abated in accordance with this Consent Decree and Stipulated Penalties shall accrue.

26.       If Defendant fails to submit any information or reports to HUD, as described in Paragraphs 15, 16, 17, and 23 in accordance with the requirements and/or deadlines set forth in this Consent Decree, Defendant shall pay Stipulated Penalties of $200 per day for each day each such submission is deemed inadequate and/or late.

27.       Payment of Stipulated Penalties shall be made to the United States in the manner set forth in Paragraph 10 of this Consent Decree.

28.       Stipulated Penalties shall accrue regardless of whether the United States has notified Defendant of the violation or made a demand for payment, but need only be paid upon demand.   All penalties shall begin to accrue on the day after payment is due and shall continue to accrue

22

through the date of payment, or until the required activity is performed. However, the United States may, in its unreviewable discretion, waive or reduce the amount of any Stipulated Penalty. Nothing herein shall prevent the United States from seeking other relief that may be available for non-compliance, nor prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

## X.   FORCE MAJEURE

29. Defendant shall provide notice orally or by electronic or facsimile transmission to the Civil Division Chief of the United States Attorney's Office as detailed in Section XVI of this Consent Decree ("Notice") as soon as possible, but not later than 72 hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. Defendant shall also provide formal, written notice, as provide in Section XVI of this Consent Decree ("Notice"), within seven (7) days of the time Defendant first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration

of any delay; its causes(s); Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

30. If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVIII of this Consent Decree (Integration).

31. If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section XI of this Consent Decree.  In any dispute involving force majeure, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is in fact a force majeure event; that Defendant gave the notice required by Paragraph 29 of this Section; that the force majeure event caused any delay Defendant claims was attributable to that event, and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

### XI.   **DISPUTE RESOLUTION**

32.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce the obligations of Defendant under this Consent Decree that

Defendant has not timely disputed in accordance with this Section.

33. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

34. If the Parties are not in agreement at the end of this informal negotiations period, the position of the United States shall be controlling unless Defendant files a petition with the Court for resolution of the dispute within twenty-one (21) days of receipt of the United States' final position. The petition shall set out the nature of the dispute with a proposal for its resolution. The United States shall have twenty-one (21) days to file a response with an alternate proposal for resolution. In any such dispute, Defendant shall have the burden of proving that the United States' proposal is arbitrary and capricious.

35.   The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect any obligation of Defendant under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise.   Stipulated Penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 28. Notwithstanding the stay of payment, Stipulated Penalties shall accrue from the first day of non-compliance with any applicable provision of this Consent Decree.   In the event that Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Paragraph 28.

## XII.   **RIGHT OF ENTRY**

36.   HUD, EPA and their representatives, contractors, consultants, and attorneys shall have the right of entry into and upon all Subject Properties owned or controlled by Defendant, at all reasonable times, upon proper presentation of credentials, for the purposes of:

a.   monitoring the progress of activities required by this Consent Decree;

b.   verifying any data or information required to be

27

submitted pursuant to this Consent Decree;

c.   obtaining samples and, upon request, splits of any samples taken by Defendant or his consultants (upon request, Defendant will be provided with splits of all samples taken by the United States); and

d.   otherwise assessing Defendant's compliance with this Consent Decree.

37.   This Section in no way limits or affects any right of entry and inspection held by the United States, HUD, EPA, any State in which the property is located, or any City in which the property is located pursuant to applicable federal, state or local laws, regulations, or permits.

### XIII.   COVENANT NOT TO SUE

38.   In consideration of the payments required by this Consent Decree and the work to be performed, and except as otherwise provided in this Consent Decree, the United States covenants not to sue or take administrative or other action against Defendant arising out of violations of Section 1018 at the Subject Properties that occurred on or before the date of lodging of this Consent Decree.   This covenant not to sue with respect to Defendant is conditioned upon the complete and

satisfactory performance by Defendant of his obligations under this Consent Decree.  This covenant not to sue extends only to Defendant and does not extend to any other person or business entity.

### XIV.   PLAINTIFFS' RESERVATIONS OF RIGHTS

39.   The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 41.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to, the following:

a.   claims based on a failure by Defendant to meet a requirement of this Consent Decree;

b.   claims based upon violations of Section 1018 that occur after the date of lodging of this Consent Decree;

c.   criminal liability; and

d.   all claims not barred by Paragraph 41 of this Consent Decree.

### XV.   MISCELLANEOUS

40.  This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

29

41.    Except as otherwise provided in this Consent Decree, each Party shall bear its own costs and attorneys' feesin this action.

### XVI.    <u>NOTICES AND SUBMISSIONS</u>

42.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be in writing and directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and Defendant.

43.    All notices and reports shall refer to this Consent Decree and the date of entry of the Consent Decree, and shall cite the case name of <u>United States v. Bashir Moghul</u> and the case number.

*U.S. Attorney's Office*:

Chief, Civil Division
United States Attorney's Office
U.S. Department of Justice
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415

30

*U.S. Department of Justice:*

       Chief, Environmental Enforcement Section
       U.S. Department of Justice
       P.O. Box 7611
       Ben Franklin Station
       Washington, DC  20044

*U.S. Department of Housing and Urban Development:*

       Director, Compliance Assistance   and
          Enforcement Division
       Office of Healthy Homes and Lead Hazard
         Control
       U.S. Department of Housing and Urban
         Development
       451 7th Street, SW
       Room P-3206
       Washington, DC 20410

       and

       John B. Shumway
       Deputy Assistant General Counsel
       Office of General Counsel
       U.S. Department of Housing and Urban
         Development
       451 7th Street, SW
       Room 9253
       Washington, DC 20410

*U.S. Environmental Protection Agency:*

> Chief, Pesticides and Toxics
>   Enforcement Section
> U.S. Environmental Protection Agency
> Region 5
> 77 West Jackson Boulevard
> Chicago, IL 60604

*Defendant:*

> Bashir Moghul
> 648 Iona Lane
> Roseville, MN 55113

44.  Any Party may change either the notice recipient or the address for providing notices to it by serving all other Parties with a notice setting forth such new notice recipient or address.

45.  Any notice, report, certification, data presentation, or other document submitted by Defendant pursuant to this Consent Decree which discusses, describes, demonstrates, supports any findings, or makes any representation concerning Defendant's compliance or non-compliance with any requirement of this Consent Decree shall be certified by Defendant or a duly authorized representative of Defendant.  A person is a "duly authorized representative" only if:  (a) the authorization is made in writing; (b) the authorization specifies either an individual or position having responsibility for overall operation of the regulated facility or activity (a duly

authorized representative may thus be either a named individual or any individual occupying a named position); and (c) the written authorization is submitted to the United States consistent with this Paragraph.

46.   The certification required by Paragraph 48, above, shall be in the following form:

> I certify that the information contained in or accompanying this [type of submission] is true, accurate and complete. With regard to [the/those identified portion(s)] of this [type of submission] for which I cannot personally verify [its/their] accuracy, I certify under penalty of law that this [type of submission] and all attachments were prepared in accordance with procedures designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, or the immediate supervisor of such persons, the information submitted is, the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

Signature: _____
Name: _____
Title: _____

## XVII.   RETENTION OF JURISDICTION

47.   This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVIII.   **INTEGRATION**

48.   This Consent Decree and its Appendix constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.   It may not be enlarged, modified, or altered unless such modifications are made in writing and approved by the Parties and the Court.   The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XIX.   **LODGING AND OPPORTUNITY FOR PUBLIC COMMENT**

49.   Defendant agrees and acknowledges that final approval of this Consent Decree by the United States and entry of this Consent Decree are subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and consideration of any comments prior to entry of the Consent Decree by the Court.   The United States reserves its right to withdraw consent to this Consent Decree based on comments received during the public notice period.   Defendant consents to entry of this Consent Decree without further notice to the Court.

50.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of any Party and the terms

of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XX.   <u>EFFECTIVE DATE</u>

51.   The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XXI. <u>RECORD RETENTION AND PRESERVATION</u>

52.   Defendant shall preserve, during the pendency of this Consent Decree and for a minimum of at least twelve (12) months after its termination, all documents and records in his custody, control or possession and in the custody, control or possession of his employees, agents, assigns, contractors, subcontractors or consultants, which in any manner relate to this Consent Decree or to the performance of work under this Consent Decree.  At the end of this twelve (12) month period and at least thirty (30) calendar days before any document or record is destroyed, Defendant shall notify and make available to the United States such documents and records, or shall provide the originals or accurate, true and complete copies of such documents and records to the United States.  Defendant shall not destroy any document or record to which the United States has requested access for inspection or copying until the United States has obtained such access or copies or withdrawn its request for such

access or copies.

## XXII.   SIGNATORIES/SERVICE

53.     Each undersigned representative of the United States and Defendant certifies that he or she has reviewed this Consent Decree, and had the opportunity to have this Consent Decree reviewed by counsel, and is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

54.     Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree based on public comments received pursuant to Paragraph 52 above.

55.     Defendant agrees that the person identified on his behalf under Section XVI is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service by certified mail in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited

to, service of a summons.

56.  Upon approval and entry of this Consent Decree by the Court, the Consent Decree shall constitute a final judgment pursuant to Rules 54 and 58 of the Federal Rule of Civil Procedure.

### XXIII. **TERMINATION**

57.  This Consent Decree shall terminate after all of the following have occurred:

a.        Defendant has completed all work required by this Consent Decree;

b.        Defendant has paid all penalties and interest due under this Consent Decree and no penalties are outstanding or owed to the United States;

c.        Defendant has certified compliance with the terms and conditions of this Consent Decree to the United States; and

d.   The United States has not disputed Defendant's certification.   If the United States disputes Defendant's certification, the Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.   If the United States does not contest the certification, the United States shall petition or the Parties shall jointly petition the Court to terminate the Consent Decree.

So entered in accordance with the foregoing this 11th day of July, 2005.

s/ Joan N. Ericksen

JOAN N. ERICKSEN

UNITED STATES DISTRICT COURT JUDGE

<u>United States v. Bashir Moghul</u>

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

THOMAS L. SANSONETTI

Assistant Attorney General

Environment and Natural Resources Division

S/W. Fisherow_____   Date_____

W. BENJAMIN FISHEROW

Deputy Chief

Environmental Enforcement Section

Environment and Natural Resources Division

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Washington, DC 20530

THOMAS B. HEFFELFINGER

United States Attorney


JOAN HUMES

Civil Division Chief



_s/Gregory G. Brooker_____ Date 3-30-05___

GREGORY G. BROOKER

Assistant U.S. Attorney

District of Minnesota

600 United States Courthouse

300 South Fourth Street

Minneapolis, MN 55415 (612) 664-5689

<u>United States v. Bashir Moghul</u>

FOR UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT:

<u>s/Kathleen D. Koch  </u>           Date____3/2/05_____

KATHLEEN D. KOCH

Acting General Counsel

<u> S/John P. Kennedy  </u>           Date___3/2/05_____

JOHN P. KENNEDY

Associate General Counsel

<u> S/John B. Shumway               </u>   Date  2/14/05            

<u>JOHN B. SHUMWAY</u>

<u>Deputy Assistant General Counsel</u>

41

Office of General Counsel

U.S. Department of Housing and Urban Development

451 Seventh Street, SW

Washington, DC 20410

(202) 708-0614  ext. 5190




United States v. Bashir Moghul


FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:




s/Norman Neidergang for          Date 2/10/05
BHARAT MATHUR
Acting Regional Administrator

U.S. Environmental Protection Agency

Region 5

77 West Jackson Boulevard

Chicago, IL 60604

(312) 353-2212

s/Bertram C. Frey_____            Date_February 06, 2005_____

BERTRAM C. FREY

Acting Regional Counsel

U.S. Environmental Protection Agency

Region 5

77 West Jackson Boulevard

Chicago, IL  60604

(312) 886-1308

s/Mary T. McAuliffe             Date January 18, 2005

MARY T. MCAULIFFE

Associate Regional Counsel

U.S. Environmental Protection Agency

Region 5

77 West Jackson Boulevard

Chicago, IL 60604

(312)  886-6237

<u>United States v. Bashir Moghul</u>

FOR BASHIR MOGHUL:

_s/Bashir A. Moghul_____          Date_1-11-05_____

Bashir Moghul, pro se

648 Iona Lane

Roseville, MN  55113

(612) 701-6962

**APPENDIX A**
**Subject Properties with Street Addresses and State,**
**and Number of Units**

1.   2422 Aldrich Avenue N.              CHILD      2 UNITS
     Minneapolis, MN

2.   2532 Bloomington Ave. S.
     Minneapolis, MN

3.   2514 Emerson Ave. N.               CHILD      2 UNITS
     Minneapolis, MN

4.   1465 Gardena Ave.                  CHILD
     Fridley, MN

5.   1437 NE Gardena Ave.               CHILD
     Fridley, MN

6.   2516 Lowry Ave. N.
     Minneapolis, MN

7.   816 Park Ave.
     Minneapolis, MN

8.  2614 Penn Ave. N.                    CHILD
    Minneapolis, MN


9.  704 Penn Ave. N.                              2 UNITS
    Minneapolis, MN


10. 3609 2nd Ave. S.
    Minneapolis, MN


11. 2210 4th Street N.                            2 UNITS
    Minneapolis, MN


12. 2520 4th Street N.
    Minneapolis, MN


13. 1917 4th Ave. N.                              2 UNITS
    Minneapolis, MN


14. 2301 5th Ave. S.
    Minneapolis, MN


15. 3230 6th St. N.                    CHILD
    Minneapolis, MN

16. 3318 6th St. N.
    Minneapolis, MN

17. 20.  2120 N. 14th St. NW
    Unit # 4
    New Brighton, MN

18. 1520 Clough Ave.                          2 UNITS
    Superior, WI

19. 1805 Butler
    Superior, WI

20. 428 Winter St.
    Superior, WI

21. 246-248 North Bevillie Avenue            2 UNITS
    Indianapolis, IN 46201

22. 1024 North Tuxedo Street                 2 UNITS
    Indianapolis, IN 46201

23. 422 No. Dearborn Street                  2 UNITS
    Indianapolis, IN 46201

24.  222-224 North Rural Street                 2 UNITS
     Indianapolis, IN 46201


25.  354 S. Grand Avenue                        2 UNITS
     Indianapolis, IN 46201


26.  1225 Dearborn Street,                      2 UNITS
     Indianapolis, IN 46201


27.  325 Dearborn Street                        2 UNITS
     Indianapolis, IN 46201